UNITED STATES DISTRICT COURT

SOUTHERN DISTRICTDISTRICT OF NEW YORK

| | | |
|---|---|---|
| MATTEL, INC., | ) | |
| | ) | CASE NO. 18-CV-11648 |
| Plaintiff, | ) | |
| | ) | **ANSWER AND DEFENSES** |
| vs. | ) | |
| | ) | |
| 2012SHININGROOM2012, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER OF LUCY992016 (NOW KNOWN AS AUX992016), CCS_ONLINE999, EBBPOP, GO-GIFT1225, HERPOP, ILANTE, POPULAR888 (NOW KNOWN AS JIANGXIA2019), KEEPUPOP, OVERPOP2009, AND PRCBEY, TO COMPLAINT**

NOW COME the Defendants lucy992016 (now known as aux992016), ccs_online999, ebbpop, go-gift1225, herpop, ilante, popular888 (now known as jiangxia2019), keepupop, overpop2009, and prcbey, by and through their attorney, and in answer to the Complaint filed by the Plaintiff, state as follows:

**IN ANSWER TO THE ALLEGATIONS OF <u>JURISDICTION AND VENUE</u>**

1. Admitted.

2. Denied.

3. Denied.

**IN ANSWER TO THE ALLEGATIONS OF <u>THE PARTIES</u>**

4. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 4, and accordingly deny.

5. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 5, and accordingly deny.

**IN ANSWER TO THE GENERAL ALLEGATIONS**

**OF <u>Plaintiff and Its Well-Known Barbie Products</u>**

6.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 6, and accordingly deny.

7.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 7, and accordingly deny.

8.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 8, and accordingly deny.

9.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 9, and accordingly deny.

10. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 10, and accordingly deny.

11. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 11, and accordingly deny.

12. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 12, and accordingly deny.

13. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 13, and accordingly deny.

14. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 14, and accordingly deny.

15. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 15, and accordingly deny.

16. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 16, and accordingly deny.

17. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 17, and accordingly deny.

18. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 18, and accordingly deny.

19. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 19, and accordingly deny.

20. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 20, and accordingly deny.

21. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 21, and accordingly deny.

22. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 22, and accordingly deny.

23. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 23, and accordingly deny.

24. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 24, and accordingly deny.

25. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 25, and accordingly deny.

26. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 26, and accordingly deny.

27. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 27, and accordingly deny.

28. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 28, and accordingly deny.

29. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 29, and accordingly deny.

**IN ANSWER TO THE GENERAL ALLEGATIONS**

**OF <u>eBay and Defendants' User Accounts</u>**

30. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 30, and accordingly deny.

31. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 31, and accordingly deny.

32. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 32, and accordingly deny.

33. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 33, and accordingly deny.

34. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 34, and accordingly deny.

35. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 35, and accordingly deny.

36. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 36, and accordingly deny.

37. Denied.

**IN ANSWER TO THE GENERAL ALLEGATIONS**

**OF <u>Defendant's wrongful and infringing Conduct</u>**

38. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 38, and accordingly deny.

39. Admitted.

40. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 40, and accordingly deny.

41. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 41, and accordingly deny.

42. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 42, and accordingly deny.

43. Denied.

44. Denied.

45. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 45, and accordingly deny.

46. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 46, and accordingly deny.

47. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 47, and accordingly deny.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

## IN ANSWER TO CAUSE OF ACTION

### FIRST CAUSE OF ACTION

54. Denied.

55. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 55, and accordingly deny.

56. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 56, and accordingly deny.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

**IN ANSWER TO <u>CAUSE OF ACTION</u>**

**SECOND CAUSE OF ACTION**

64. Denied.

65.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 65, and accordingly deny.

66. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 66, and accordingly deny.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

75. Denied.

76. Denied.

**IN ANSWER TO <u>CAUSE OF ACTION</u>**

**THIRD CAUSE OF ACTION**

77.  Denied.

78. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 68, and accordingly deny.

79. Denied.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

**IN ANSWER TO <u>CAUSE OF ACTION</u>**

**FOURTH CAUSE OF ACTION**

86. Denied.

87. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 87, and accordingly deny.

88. Denied.

89. Denied.

90. Denied.

91. Denied.

92. Denied.

93. Denied.

**IN ANSWER TO <u>CAUSE OF ACTION</u>**

**FIFTH CAUSE OF ACTION**

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

## IN ANSWER TO <u>CAUSE OF ACTION</u>

## SIXTH CAUSE OF ACTION

99. Denied.

100.     Denied.

101.     Denied.

102.     Denied.

103.     Denied.

## IN ANSWER TO <u>CAUSE OF ACTION</u>

## SEVENTH CAUSE OF ACTION

104.     Denied.

105.     Denied.

106.     Denied.

107.     Denied.

108.     Denied.

109.     Denied.

110.     Denied.

## IN ANSWER TO <u>CAUSE OF ACTION</u>

## EIGHTH CAUSE OF ACTION

111.     Denied.

112.     Denied.

113.     Denied.

## <u>DEFENSES</u>

### New York District Court Lacks Personal Jurisdiction

114.     A court may exercise "specific jurisdiction" over a defendant for a cause of action "arising out of or related to the defendant's contacts with the forum."[1] Personal jurisdiction of a court over a non-domiciliary defendant turns on the state long-arm statute and due process requirement.[2] Defendants do not contest the applicability of New York long-arm statute. Thus, personal jurisdiction ultimately turns on whether personal jurisdiction violates due process. Analysis of due process entails two essential components: the "minimum contacts" inquiry and the "reasonableness" inquiry.[3]

<u>No Minimum Contact with New York</u>

115.     With respect to analysis of minimum contacts as a part of the due process inquiry, the Court asks whether the defendant has sufficient contacts with the forum state to justify such personal jurisdiction.[4] Second Circuit looks at the totality of Defendant's contacts with the forum state to determine whether Defendant has minimum contacts with New York to exercise personal jurisdiction over Defendant.[5] In *Chloe*, a trademark infringement case, an employee's single act of shipping a counterfeit handbag to New York, combined with his employer's extensive business activity involving New York, gave rise to personal jurisdiction over the employee.[6]

116.     New York District Court lacks personal jurisdiction over Defendants. Based on available data from eBay, the answering Defendants have very minimal amount of sales of the alleged infringing products. For example, according to eBay data available to Defendant ccs_online999, ccs_online999 sold only one alleged infringing product to New York.

117.     In addition, Defendants do not have extensive business activity in New York. Defendants never advertised to New York customers. They did not have any office in New York.

---

[1] *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414-16 (1984).

[2] *See Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 243-44 (2d Cir. 2007).

[3] *See Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 164 (2d Cir. 2010).

[4] *See Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement,* 326 U.S. 310, 316 (1945)

[5] *See Chloe at* 164.

[6] *Id.*

They never came to New York. They never hired anyone from New York. They never paid taxes to New York. In fact, these Defendants never wanted to conduct business in New York because among all their business, a very small fraction of goods were shipped to New York.

<u>Unreasonable to Exercise Personal Jurisdiction</u>

118.    With respect to analysis of reasonableness, the Court asks whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice"—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case.[7] The Supreme Court evaluates the following factors as part of this "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.[8]

119.    It is not reasonable to exercise personal jurisdiction over Defendants. The burden that the exercise of personal jurisdiction on Defendants is very high because Defendants are hobby sellers who reside outside the U.S. The interest of the forum state in adjudicating the case is not high because Plaintiff is a California-based business and Defendants are all based in China. Defendants purchased the alleged infringing products in China and Plaintiff manufactured its products in China. Majority part of the Defendants' assets is in China. If there is any state for adjudication, the case should be litigated in China or at least California. Plaintiff might have interest in obtaining relief in New York court, but even if Plaintiff prevails in this case, it is impossible to enforce the judgment because Defendants reside in China, with bank accounts in China. It takes significant amount of

---

[7] *Id.*
[8] *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113–14, (1987)

time and resource to enforce a U.S. judgment in China even when the service of process is proper, which is insufficient as discussed below.

**Forum Non Conveniens**

120.     Southern District of New York should not take jurisdiction over this case because of the common law doctrine forum non conveniens. A court may dismiss a case under the doctrine of forum non conveniens when private and public factors favor the dismissal, and there is an alternative court to hear the case and provide adequate remedies.[9]

121.     Relevant public and private factors favor dismissal based on forum non conveniens. The only reason that Plaintiff chose to file the complaint in Southern District of New York is that Plaintiff's counsel is in New York and Plaintiff hired NAL, a third party investigation company, to purchase alleged infringing products in New York.

122.     In terms of private factors, all Defendants in this case are not residents in New York. Instead, all Defendants conduct business in China, all the relevant witnesses reside in China. All documentations are made in China. All Barbie products are manufactured in China. All alleged infringing products are purchased from suppliers in China. All suppliers obtained from manufactured in China. All the sales are shipped from China. Thus, it would be impractical and time wasting for Southern District of New York to subpoena witnesses or request parties to provide evidence.

123.     In terms of public factors, courts in China have strong interest to hear the case because, in addition to all private factors, China is focusing its attention on strengthening IP rights protection by setting up very specific practice standards. [10] Because all Defendants reside in China, courts in China have strong interest to try this case so that similar cases can be litigated more effectively.

---

[9] *See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981)*

[10] *See* The US-China Business Council, Best Practices: Intellectual Property Protection in China, available at https://www.uschina.org/reports/best-practices-intellectual-property-protection-china

124.     On the other hand, there is an adequate alternative court to hear the case and provide

adequate remedies. Plaintiff could have filed the complaint in a court in China. By doing so, service

of process via the method required by the Hague Convention will give Defendants adequate notice.

There is no showing that Plaintiff will not have its day in a court in China. And there is no showing

that any remedies issued by a court in China will be clearly inadequate. Instead, because Defendants

all reside in China, with assets in China, enforcement will be more effective compared to

enforcement in the U.S. because many Defendants only have a few hundred dollars in PayPal

accounts. It would be in the best interest of Plaintiff to litigate this case in China because

enforcement on assets in China is more effective if a court in China tries and rules in this case.

**Plaintiff's Service of Process Using Electronic Mail is Insufficient**

125.     The service process was improper because it was not made in accordance with Fed.

R. Civ. P. 4(f). Under Fed. R. Civ. P. 4(f), "unless federal law provides otherwise, an individual—

other than a minor, an incompetent person, or a person whose waiver has been filed—may be served

at a place not within any judicial district of the United States:

> (1)     by any internationally agreed means of service that is reasonably calculated to
>
> give notice, such as those authorized by the Hague Convention on the Service
>
> Abroad of Judicial and Extrajudicial Documents."

<u>Application of the Hague Convention is Proper</u>

126.     Service of an individual in a foreign country may be accomplished by "any

internationally agreed means of service that is reasonably calculated to give notice, such as those

authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial

Documents".[11] Article 1 of Hague Convention requires that "[t]he present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad. This Convention shall not apply where the address of the person to be served with the document is not known."[12]

127.    The Hague Convention applies in this case. First, the alleged Trademark/Copyright infringement is a civil matter. Second, China is a signatory to the Hague Convention because China acceded to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, also called the Hague Service Convention in 1991, and its provisions entered into force in 1992.[13]  Third, Plaintiff clearly knew the exact address of Defendants, through services of NAL. Unlike many other defendants in prior cases where online sellers hid physical addresses, all answering Defendants in this case voluntarily used their real physical addresses to register for their online seller accounts. Anyone, including Plaintiff can request eBay for Defendants' business information.

128.    Due to technical difficulty, eBay.com cannot display Defendants detailed business information. There is no intentional concealment on the part of Defendants because they submitted their business information upon setting up the online store. It is eBay.com that negligently failed to display these Defendants' business information. On the other hand, Plaintiff failed to contact either eBay.com or Defendants to obtain valid business information for service of process purpose.

129.    Thus, this case does not fall into the exception where the address of the person to be served with the document is not known.

130.    Therefore, the Hague Convention applies, and the service of process is improper.

---

[11] *See* Fed. R. Civ. P. 4(f).

[12] *See* Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Hague Conference on Private International Law, available at https://assets.hcch.net/docs/f4520725-8cbd-4c71-b402-5aae1994d14c.pdf.

[13] *See* Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters- Status Table, Hague Conference on Private International Law, available at https://www.hcch.net/en/instruments/conventions/status-table/?cid=17.

Application of the Hague Convention is Exclusive

131.     Service of process under the Hague Convention is the exclusive means of service of process to foreign corporations.[14] By virtue of the Supremacy Clause, U.S. Const., Art. VI, the Hague Convention preempts inconsistent methods of service prescribed by state law in all cases to which it applies.[15] The U.S. Supreme Court agrees that the Hague Convention provides simple and certain means by which to serve process on a foreign national.[16] Those who eschew its procedures risk discovering that the forum's internal law required transmittal of documents for service abroad, and that the Convention therefore provided the exclusive means of valid service.[17] In addition, parties that comply with the Convention ultimately may find it easier to enforce their judgments abroad.[18]

132.     Article 5 of the Hague Convention stipulates that "[t]he Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either –

          a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or

          b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed."[19]

133.     The Central Authority of China has the following requirements, among others, for service of process in China from the US: Plaintiff must file required documents, including but not limited to, United States Marshals Service Form USM-94, original and Chinese translation of any

---

[14] *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 706 (1988).

[15] *Id.* at 699.

[16] *Id.* at 706.

[17] *Id.*

[18] *Id.*

[19] *See* China - Central Authority & Practical Information, Hague Conference on Private International Law, available at https://www.hcch.net/en/states/authorities/details3/?aid=243.

documents and evidence, to the Central Authority of China.[20] And the Central Authority of China refers the document to the competent court.[21] The court in China will serve the document directly to the addressee or the person who is entitled to receive the document.[22] There is no such method as informal delivery in the Chinese domestic law, and the addressee may refuse to accept it in any case.[23] The Supreme People's Court of The People's Republic of China (the People's Court) requires court documents to be delivered by mail services appointed by the People's Court.[24]

134.    Because China's internal law does not allow service by electronic mail, and because this court allowed Plaintiff to serve Defendant via electronic mail, a method incompatible with the law of the State addressed, the Hague Convention preempts the Plaintiff's requested electronic mail service of process. The electronic mail service is thus insufficient and ineffective.

<u>Allowing Plaintiff Service of Process via Electronic Mail Violates N.Y.C.P.L.R. § 308(5).</u>

135.    According to Rule 308(5) of the New York Civil Practice Law and Rules, service is permitted "in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section." Paragraphs one, two, and four provide for: "(1) personal service; (2) delivering the summons to a person of suitable age and discretion at the individual's actual place of business, dwelling place or usual place of abode, and mailing it; (3) serving the individual's agent; or (4) affixing the summons to the individual's actual place of business, dwelling place, or usual place of abode, and mailing it."[25]

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *See* <u>Regulations of the Supreme People's Court regarding Court Appointed Mail Services in Civil Litigations</u>, The Supreme People's Court, available at <u>http://www.court.gov.cn/shenpan-xiangqing-1263.html</u>.

[25] *See Sec. Exch. Comm'n v. Nnebe*, No. 01-cv-5247 (KMW) (KNF), 2003 WL 402377, at *3 (S.D.N.Y. Feb. 21, 2003).

136.     This Court allowed email service of process when foreign defendants did not have

any physical address on the defendants' storefront and the primary or even exclusive way of

communication was through email.[26] In addition to the reasoning that email is the primary or

exclusive means of communication, the Court reasoned that because "[n]o information is listed on

the Online Storefronts' pages revealing any true legal names or physical addresses for Defendants or

their Online Storefronts, " and that Defendants appeared to have concealed their true identities and

contact information, besides the email addresses identified by Plaintiffs, the Court finds that the

modes of service contemplated by N.Y.C.P.L.R. § 308(1), (2), and (4) are impracticable, and that

service by email is appropriate and satisfies due process.

137.     Here, service of process via electronic mail is improper because Defendants have

provided physical addresses, legal names, and all other information to enable service of process

required by the Hague Convention.  And the modes of service contemplated by N.Y.C.P.L.R. §

308(1), (2), and (4) are all available. Admittedly, Defendants listed a convenient online chat option to

communicate with customers. Yet, this convenient option is intended primarily for communications

related to customers' questions about purchases only. It is not a shortcut for Plaintiff to circumvent

the service of process requirements, at the expense of Defendants, mandated by the Hague

Convention.

<u>Allowing Plaintiff Service of Process via Electronic Mail Violates Due Process</u>

138.     Under Federal Rule of Civil Procedure 4(f)(3), "a Court may fashion means of

service on individual in a foreign country, so long as the ordered means of service (1) is not

prohibited by international agreement; and (2) comports with constitutional notions of due process."

---

[26] *See Cengage Learning, Inc. v. Doe 1,* No. 18-CV-403 (RJS), 2018 WL 2244461, at *4 (S.D.N.Y.
Jan. 17, 2018)

139.     Here, by not serving Defendant with mail services prescribed by The Central Authority of China, Defendants did not have adequate and timely knowledge of this suit. Admittedly, electronic mails transmit documents sooner than traditional mails. And it is also true that Defendants will read the actual complaint and summon sooner than traditional mails. Even though, the documents transmitted are formal court documents, Defendants did not have adequate notice because the particular way (i.e., by electronic mail) that the complaints and summons are handled is informal and does not give rise to adequate notice to Defendant.

140.     As was discussed in the previous section, The Supreme People's Court of The People's Republic of China requires court documents to be delivered by mail services appointed by the People's Court.[27] Defendants reside in China and has never been to the U.S., and thus do not have knowledge of the U.S. legal system. Defendants have knowledge, at most, of how courts in China serve complaints and summons. By receiving court documents via mail services authorized and certified by The Supreme People's Court of The People's Republic of China, Defendant would have known that such documents are genuine, and thus would have sought legal counsel at a much earlier stage. In addition, it is widely known that many scammers sent phishing emails to innocent Chinese sellers like Defendants because personal information is often sold to scammers.[28] Service of process by electronic mail confuses Defendants further as to the authenticity of these documents under the circumstances.

141.     Plaintiff, with the option to comply with the Hague Convention, purposefully chose to email complaint and summon to Defendants, knowing that emails will be possibly screened by spam filters or buried in other junk emails. Delayed response from Defendants disadvantaged

---

[27] *See* <u>Regulations of the Supreme People's Court regarding Court Appointed Mail Services in Civil Litigation</u>s, The Supreme People's Court, available at <u>http://www.court.gov.cn/shenpan-xiangqing-1263.html</u>.

[28] *See* Engen Tham, *Data dump: China sees surge in personal information up for sale*, REUTERS.COM (AUGUST 22, 2018) https://www.reuters.com/article/us-china-dataprivacy/data-dump-china-sees-surge-in-personal-information-up-for-sale-idUSKCN1L80IW

Defendants because Defendants could neither defend themselves timely against TRO nor attended

related hearings. Due to lack of adequate notice, Defendants already missed multiple deadlines to

answer, plead, or otherwise respond to this suit, and were thus prejudiced by Plaintiff's improper

service of process. It is also a waste of judicial resources because the Court spent a considerable

amount of time and resources to make rescheduling among parties.


**First Sale Defense Applies If The Alleged Infringing Product Is Not Counterfeit**

142.     As a general rule, trademark law does not reach the sale of genuine goods bearing a

true mark even though the mark owner does not authorize the sales.  Thus, a distributor who

resells trademarked goods without change is not liable for trademark infringement.[29] Importantly,

the branded item must be in an unchanged state.[30] When trademarked goods are materially different

from the goods that the trademark is known to represent, the infringer cannot use the first sale

doctrine as a defense.[31]

143.     It is probable that the alleged infringing Barbie product is genuine Barbie product

because Plaintiff used incorrect comparison method. The reasoning is that Plaintiff is comparing

Barbie products sold within the U.S. to Barbie products sold in China. Pending discovery against

Plaintiff, Plaintiff might be selling Barbie in China with small or no variations from its U.S. Barbie

products. In fact, on JD.com, many genuine Barbie products are different from what Plaintiff claims

to be genuine U.S. Barbie products. JD.com is a NASDAQ company and is China's biggest online

retailer, which takes a strict zero-tolerance approach to counterfeits to ensure that only the highest

---

[29] *See Polymer Technology Corp. v. Mimran,* 975 F.2d 58, 61 (2d Cir. 1992)
[30] *See Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 317 (S.D.N.Y. 2007)
[31] *Id.*

quality, genuine products reach JD.com's customers.[32] Thus, the alleged infringing products might be genuine Barbie products.

144.     If the alleged infringing Barbie product is not proven counterfeit by Plaintiff by the preponderance of evidence. Defendants are not liable for infringement because there is no material difference between the alleged infringing products and Plaintiff's Barbie products since Plaintiff stipulates in its complaint in paragraph 42 that the alleged infringing Barbie products are "indistinguishable from Plaintiff's Barbie Products."


**Defendants Lack Willfulness Even If the Alleged Infringing Product Is Counterfeit**

145.     Even if there is any infringement of Plaintiff's trademark/copyright, Defendants' act was not willful.

146.     Defendants do not have actual or apparent knowledge that the infringing product is possibly counterfeit. Defendants are not manufacturers. Defendants use reasonable care when purchasing products because Defendants purchased products from reputable sources. Sellers who sold Barbie products to Defendants guaranteed that the products were genuine. Defendants compared the purchased Barbie products with what Defendants reasonably believed to be genuine Barbie products on Chinese market. Within Defendants' best knowledge, Defendants could not tell the difference between these products either, just like any other people, including many customers and Plaintiff itself, since Plaintiff stipulates in its complaint in paragraph 42 that the alleged infringing Barbie products are "indistinguishable from Plaintiff's Barbie Products."

147.     Defendants did not even have reasonable suspicion about the authenticity of the products because the purchase price is reasonable.

**No Competition between the Alleged Infringing Products and Plaintiff's Products**

---

[32] *See* Richard Liu, *Connecting Consumers Directly to Global Products,* JD.COM (2004) https://corporate.jd.com/aboutUs

148.     Defendants sell products on eBay.com. Upon belief and information, Plaintiff does not offer for any Barbie products on eBay.com. Defendants cannot be said to compete with Plaintiff on eBay.com because Plaintiff does not do business on the same platform and thus is not even a competitor.

**No Damage of Reputation to Plaintiff**

149.     Because Defendants' alleged infringing products are "indistinguishable from Plaintiff's Barbie Products," Defendants were at least selling products with comparable quality with Plaintiff's products. If Defendants' alleged infringing products were inferior in terms of quality, Defendants would have caused customers to cast doubt on the reputation of Plaintiff, which is not the case in this suit.

**Laches**

150.     Upon belief and information, Plaintiff might have known that many sellers including Defendants are selling alleged counterfeit products but did not take any actions. Plaintiff failed to show that it at least attempted to contact law enforcement in China or filed any grievances or complaints in courts in China. By failing to take legal actions, knowing that there are occurrence of alleged infringing activities, Plaintiff should be estopped from litigating this case at a later time when Defendants are unfairly disadvantaged by Plaintiff's intentional delay of litigation.

## DEFENDANTS' PRAYER FOR RELIEF

**WHEREFORE**, Defendants pray that

1.  Plaintiff take nothing by way of this action;

2.  The Complaint be dismissed with prejudice and judgment entered in favor of Defendants;

3.  Defendants be awarded costs of suit, attorneys' fees and any other relief which the Court

    deems proper.

4.  Plaintiff be awarded only compensation based on Defendants' profit from sales of the alleged

infringing products if the Court finds Defendants liable for infringement.

                                        Respectfully submitted,

April 8th, 2019.                        By: s/Xuanye Wang
                                                Xuanye Wang
                                                Attorney for Defendants
                                                lucy992016 (now known as aux992016),
                                                ccs_online999, ebbpop, go-gift1225, herpop,
                                                ilante, popular888 (now known as jiangxia2019),
                                                keepupop, overpop2009, and prcbey
                                                Email: evelynwang@whitewoodlaw.com