UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MATTEL, INC.,

                                Plaintiff,                          18-cv-11648 (PKC)

              -against-

                                                  FINDINGS OF FACT
                                           <u>AND CONCLUSIONS OF LAW</u>


2012SHININGROOM2012, et al.,

                                Defendants.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

           Plaintiff Mattel, Inc. ("Mattel") commenced this action on December 13, 2018, alleging trademark counterfeiting, trademark infringement, and false designation of origin, passing off, and unfair competition, in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1116(d), 1117(b)-(c), and 1125(a); copyright infringement, in violation of 17 U.S.C. § 501(a); and parallel state law claims. (Compl. (Doc 7.)) Defendants are individuals and/or entities located in China that operate merchant storefronts on the eBay.com platform, where they sold the allegedly infringing products. (Doc 7 ¶¶ 5, 34; Joint Pretrial Order (Doc 83) ¶ 17.) After conducting a show-cause hearing on December 20, 2018, the Court entered a preliminary injunction against defendants. (Doc 21.)

           Only ten defendants—lucky992016 (also known as aux992016), ccs_online999, ebbpop, go-gift1225, herpop, ilante, popular888 (also known as jingxia2019), keepupop, ovepop2009, and prcbey (collectively, the "Wang Defendants")—have appeared in this case. These are "doing-business-as" entities, respectively owned and operated by four individuals (the

"Storefront Owners").  The Wang Defendants answered the Complaint on April 8, 2019.  (Doc 30.)

The Court held a final pretrial conference on May 14, 2020.  (See Tr. of May 14, 2020 (Doc 84).)  The Wang Defendants did not make any pretrial submissions, and consented to the entry of the Joint Pretrial Order ("JPO") proposed by Mattel.  The parties agreed to waive a jury trial and proceed to a trial before the Court.  (Doc 83.)

The Court held a bench trial on July 21, 2020.[1]  No witnesses were called to testify.  Mattel rested on the stipulated facts in the JPO, along with those set forth in the "Infringement Chart" provided to the Court at trial, to which the Wang Defendants stipulated.  (See Trial Tr. at 23.)  Mattel introduced additional documentary evidence, including its trademark and copyright registrations (Pl. Ex. A & Ex. B to Ex. A), copyright deposit materials (Pl. Ex. B), images of the Wang Defendants' allegedly infringing storefront listings (Pl. Ex. A to Ex. C), and Mattel's first set of requests for production of documents and things, with the Wang Defendants' responses (Pl. Ex. D).  Mattel and the Wang Defendants each made post-trial submissions, including proposed judgments.

As set forth below, Mattel has established that certain of the Wang Defendants counterfeited one of Mattel's Barbie Marks, and willfully infringed this registered Barbie Mark and several of its registered Barbie Works.  Accordingly, the Court will award statutory damages in the amount of $200,000 from each of the individual Storefront Owners, along with reasonable attorneys' fees, will enter a permanent injunction, and will impose a continued asset restraint and transfer of frozen assets in full or partial satisfaction of the damages award.

---

[1] Despite the ongoing COVID-19 pandemic, the bench trial was conducted live in open Court.

FINDINGS OF FACT[2]

A. The Parties

1. Mattel owns the famous "Barbie" brand, which includes a range of commercial products such as toy dolls, playhouses, toy cars, books, movies, games, puzzles, and clothing. (Doc 83 ¶ 10.)  The Barbie doll has been recognized as one of the best-selling toy dolls in the world.  (Id. ¶¶ 8-9.)

2. Mattel owns a number of US Trademark Registrations for BARBIE or BARBIE formative marks, including but not limited to:  U.S. Trademark Reg. No. 1,300,766 for "BARBIE" for a variety of goods in Class 28, U.S. Trademark Reg. No. 1,693,139 for "BARBIE" for a variety of goods in Class 25, U.S. Trademark Reg. No. 1,746,477 for "BARBIE" for a variety of goods in Class 28, U.S. Trademark Reg. No. 1,754,535  for "BARBIE" for a variety of goods in Class 25, U.S. Trademark Reg. No. 1,773,571 for "BARBIE" for a variety of goods in Class 14, U.S. Trademark Reg. No. 2,040,801 for "BARBIE" for a variety of goods in Class 25, U.S. Trademark Reg. No. 3,287,023 for "BARBIE" for a variety of goods in Class 28, U.S. Trademark Reg. No. 2,087,842 for

 for a variety of goods in Class 28 and U.S. Trademark Reg. No. 2,639,971

for  for a variety of goods in Classes 25 and 28 (collectively, the "Barbie Marks").  (Doc 83 ¶ 11; Pl. Ex. A to Ex. A.)

3. Mattel's registrations for the Barbie Marks are valid and incontestable.  (Doc 83 ¶ 12.)

4. Mattel is the exclusive owner of all right and title to the Barbie Marks.  (Doc 83 ¶ 13.)

---

[2] The citation to particular evidence is illustrative and is not intended to imply that it is the only evidence to support the statement.

5.  Mattel has used the Barbie Marks in interstate commerce since on or before the dates of first use as reflected in the registrations.  (Doc 83 ¶ 14.)

6.  Mattel also owns U.S. Copyright Registrations for Barbie brand designs and imagery, including but not limited to: U.S. Copyright Reg. No. VA 1-884-053, covering the Barbie Silhouette Head, U.S. Copyright Reg. No. VA 1-843-508, covering The Fabulous Life of Barbie Style Guide 2011, U.S. Copyright Reg. No. VA 1-849-098, covering the Barbie 2012 Style Guide, Copyright Reg. No. VA 1-849-097, covering the Barbie 2013 Style Guide, and U.S. Copyright Reg. No. PA 1-647-312, covering Barbie and The Diamond Princess Castle (collectively, the "Barbie Works").  (Doc 83 ¶ 15; Pl. Ex. B to Ex. A.)

7.  Mattel is the exclusive owner of the Barbie Works.  (Doc 83 ¶ 16.)

8.  The Wang Defendants are individuals and/or businesses located in China, but conduct business in the U.S. and other countries by means of their User Accounts[3] and Merchant Storefronts[4] on eBay, as well as potential yet undiscovered additional online marketplace platforms.  (Doc 83 ¶ 17.)

9.  In its Complaint, Mattel named the Wang Defendants' doing-business-as entities, which are the Merchant Storefronts.  (Trial Tr. at 4.)  These storefronts are operated by four individuals:

---

[3] As defined in the Joint Pretrial Order, "User Accounts" are "[a]ny and all websites and any and all accounts with online marketplace platforms such as eBay, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them."  (Doc 83 at ii.)

[4] As defined in the Joint Pretrial Order, "Merchant Storefronts" are "[a]ny and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them."  (Doc 83 at ii-iii.)

    a.  Defendants lucky992016 (also known as aux992016), popular888 (also known as jingxia2019), and ilante share a common owner, Ya Qin.  (Doc 83 ¶ 2; Infringement Chart at 1.)

    b.  Defendants herpop, go-gift1225, and prcbey share a common owner, Huang Dongwu.  (Doc 83 ¶ 3; Infringement Chart at 3.)

    c.  Defendants keepupop, ebbpop, and ovepop2009 share a common owner, Xioling Gao.  (Doc 83 ¶ 4; Infringement Chart at 4.)

    d.  Defendant ccs_online999 is owned by Luo Bin.  (Doc 83 ¶ 5; Infringement Chart at 6.)

10. For purposes of its claims, Mattel submits that there are four defendants—the individual Storefront Owners.  (Trial Tr. at 25.)

B.  <u>Wang Defendants' Sales of Infringing Products</u>

11. At trial, the parties stipulated to the facts set forth in Mattel's prepared "Infringement Chart," which lists each of the Wang Defendants' products as "Counterfeit Goods."  (<u>See</u> Infringement Chart; Trial Tr. at 23.)

12. The Wang Defendants manufactured, advertised, marketed, promoted, offered for sale, and sold products bearing or used in connection with the Barbie Marks.  (Doc 83 ¶ 70.)

13. Defendants reproduced, prepared derivative works, distributed, and/or sold products bearing or used in connection with the Barbie Works.  (Doc 83 ¶ 71.)

14. Defendant lucky992016 (also known as aux992016) offered for sale and sold products with the listing title "barbie doll face 1959 Cute Hard Phone Case Cover for iphone 5 6 7 8 plux x" on eBay, for $2.99 per item (the "lucky992016 Product").  (Doc 83 ¶ 54; Pl. Ex. A to Ex. C.)

15. The lucky992016 Product bears the following registered Barbie Works: VA 1-843-508; VA 1-849-098; and VA 1-884-053.  (Infringement Chart at 1; Pl. Ex. B.)

16. The lucky992016 Product is not and has never been sold by Mattel or its licensees.  (Doc 83 ¶ 57.)

17. Neither Mattel nor its licensees authorized the sale of the lucky992016 Product.  (Doc 83 ¶ 58.)

18. Defendant luck992016 sold twenty-nine (29) lucky992016 Products on eBay.  (Doc 83 ¶ 56; Infringement Chart at 1.)

19. Defendant popular888 (also known as jingxia2019) offered for sale and sold products with the listing title "barbie doll face for girl Hard Phone Cover Case for iphone 5 6 7 8 X" on eBay, for $2.89 per item (the "popular888 Product").  (Doc 83 ¶ 59; Pl. Ex. A to Ex. C.)

20. The popular888 Product bears the following registered Barbie Works: VA 1-843-508; VA 1-849-098; and VA 1-884-053.  (Infringement Chart at 1; Pl. Ex. B.)

21. The popular888 Product is not and has never been sold by Mattel or its licensees.  (Doc 83 ¶ 61.)

22. Neither Mattel nor its licensees authorized the sale of the popular888 Product.  (Doc 83 ¶ 62.)

23. Defendant popular888 sold one hundred thirty-seven (137) popular888 Products on eBay. (Doc 83 ¶ 63.)  At least one of these Products was sold in New York.  (Id. ¶ 84.)

24. Defendant ilante offered for sale and sold products with the listing title "barbie doll face Hard Phone Cover Case for Huawei P8 P9 P 10 Lite" on eBay, for $2.99 per item (the "ilante Product").  (Doc 83 ¶ 43; Pl. Ex. A to Ex. C.)

25. The ilante Product bears the following registered Barbie Works: VA 1-843-508; VA 1-849-098; and VA 1-884-053.  (Infringement Chart at 2; Pl. Ex. B.)

26. The ilante Product is not and has never been sold by Mattel or its licensees.  (Doc 83 ¶ 47.)

27. Neither Mattel nor its licensees authorized the sale of the ilante Product.  (Doc 83 ¶ 48.)

28. Defendant ilante sold nine (9) ilante Products on eBay.  (Doc 83 ¶ 45.)  At least one of these Products was sold to a consumer located in New York.  (Id. ¶ 46.)

29. Defendant herpop offered for sale and sold products with the listing title "Lot 10 pcs Barbie princessChildren cartoon girl cotton underwear Boxer shorts" on eBay, for $17.26 per item (the "herpop Product").  (Doc 83 ¶ 37; Pl. Ex. A to Ex. C.)

30. The herpop Product bears the registered Barbie Work VA 1-843-508 and Barbie Mark No. 2,639,971.  (Infringement Chart at 3; Pl. Ex. A to Ex. A; Pl. Ex. B.)

31. The herpop Product is not and has never been sold by Mattel or its licensees.  (Doc 83 ¶ 41.)

32. Neither Mattel nor its licensees authorized the sale of the herpop Product.  (Doc 83 ¶ 42.)

33. Defendant herpop sold one hundred sixty-five (165) herpop Products on eBay.  (Doc 83 ¶ 39.)  At least one of these Products was sold to a consumer located in New York.  (Id. ¶ 40.)

34. Defendant go-gift1225 offered for sale and sold products with the listing title "10 pcs Barbie princess Neck Strap Lanyard Keychain Phone Card Blade Holder L46" on eBay, for $9.00 per item (ten pieces each) (the "go-gift1225 Product").  (Doc 83 ¶ 32; Pl. Ex. A to Ex. C.)

35. The go-gift1225 Product incorporates the word "Barbie," along with what appear to be images of cartoon dolls, on a pink lanyard.  (Pl. Ex. A to Ex. C; Infringement Chart at 3.)

36. Mattel does not identify any particular Barbie Mark or Work infringed by the go-gift1225 Product.  (See Infringement Chart.)

37. The go-gift1225 Product is not and has never been sold by Mattel or its licensees.  (Doc 83 ¶ 35.)

38. Neither Mattel nor its licensees authorized the sale of the go-gift1225 Product.  (Doc 83 ¶ 36.)

39. Defendant go-gift1225 sold one hundred eighteen (118) go-gift1225 Products on eBay.  (Doc 83 ¶ 34.)

40. Defendant prcbey offered for sale and/or sold products with the listing title "Lot cartoon Barbie princess Neck Straps Lanyards Mobile Phone ID Card Key" on eBay, for $1.90 per item (the "prcbey Product").  (Doc 83 ¶ 65.)

41. The prcbey appears markedly similar to the go-gift1225 Product: it incorporates the word "Barbie," along with what appear to be images of cartoon dolls, on a pink lanyard.  (Pl. Ex. A to Ex. C; Infringement Chart at 3.)

42. Mattel does not identify any particular Barbie Mark or Work infringed by the prcbey Product.  (See Infringement Chart.)

43. The prcbey Product is not sold by Mattel.  (Doc 83 ¶ 67.)

44. Neither Mattel nor its licensees authorized the sale of the prcbey Product.  (Doc 83 ¶ 69.)

45. Defendant prcbey sold forty-nine (49) prcbey Products on eBay.  (Doc 83 ¶ 68.)

46. Defendant keepupop offered for sale and sold products with the listing title "6pcs/lot cartoon Barbie Children Girl' cotton underwear triangle pants" on eBay for $9.60 per item (the "keepupop Product").  (Doc 83 ¶ 49; Infringement Chart at 4.)

47. The keepupop Product bears the following registered Barbie Works: VA 1-843-508, VA 1-849-097, PAu 2-860-319, and VA 1-849-098.  (Infringement Chart at 4; Pl. Ex. A to Ex. A; Pl. Ex. B.)

48. The keepupop Product bears the registered Barbie Mark No. 2,639,971.  (Infringement Chart at 4; Pl. Ex. A to Ex. A.)

49. The keepupop Product is not and has never been sold by Mattel or its licensees.  (Doc 83 ¶ 52.)

50. Neither Mattel nor its licensees authorized the sale of the keepupop Product.  (Doc 83 ¶ 53.)

51. Defendant keepupop sold four (4) keepupop Products on eBay.  (Doc 83 ¶ 51.)

52. Defendant ebbpop offered for sale and sold products with the listing title "Lot Cartoon barbie [S]traps Lanyard ID Bad[g]e Holders Mobile Neck Key chains gifts" on eBay, for $9.90 per item (ten pieces each) (the "ebbpop Product").  (Doc 83 ¶ 26; Pl. Ex. A to Ex. C.)

53. The ebbpop Product appears markedly similar to the go-gift1225 and prcbey Products: it incorporates the word "Barbie," along with what appear to be images of cartoon dolls, on a pink lanyard.  (Pl. Ex. A to Ex. C; Infringement Chart at 5.)

54. Mattel does not identify any particular Barbie Mark or Work infringed by the ebbpop Product.  (See Infringement Chart.)

55. The ebbpop Product is not and has never been sold by Mattel or its licensees.  (Doc 83 ¶ 30.)

56. Neither Mattel nor its licensees authorized the sale of the ebbpop Product.  (Doc 83 ¶ 31.)

57. Defendant ebbpop sold six (6) ebbpop Products on eBay.  (Doc 83 ¶ 28.)  At least one of these Products was sold to a consumer located in New York.  (Id. ¶ 29.)

58. Defendant ovepop2009 offered for sale and sold products with the listing title "6 Pairs Barbie Princess Girl' Briefs Panties Underpants Underwear 6 Colors N166" on eBay, for $10.20 per item (the "ovepop2009 Product").[5]  (Pl. Ex. A to Ex. C; Infringement Chart at 5.)

59. The ovepop2009 Product bears the following registered Barbie Works: VA 1-843-508, VA 1-849-097, PAu 2-860-319, and VA 1-849-098.  (Infringement Chart at 5; Pl. Ex. A to Ex. A; Pl. Ex. B.)

60. The ovepop2009 Product bears the registered Barbie Mark No. 2,639,971.  (Infringement Chart at 5; Pl. Ex. A to Ex. A.)

61. The ovepop2009 Product appears identical to the keepupop Product.  (Infringement Chart at 4-5; Pl. Ex. A to Ex. C.)

62. Defendant ovepop2009 sold eighty-eight (88) ovepop2009 Products.  (Infringement Chart at 5.)

63. Defendant ccs_online999 offered for sale and sold products with the listing title "New A Deck Cartoon Poker Barbie playing card" on eBay, for $2.84 per item (the "ccs_online999 Product").  (Doc 83 ¶ 20; Pl. Ex. A to Ex. C.)

---

[5] The Court notes that the JPO does not contain stipulated facts as to ovepop2009, and therefore relies on the evidence adduced at trial.  (See Doc 83.)

64. The ccs_online999 Product bears the registered Barbie Work VA 1-843-508 and the registered Barbie Mark No. 2,639,971.  (Infringement Chart at 6; Pl. Ex. A to Ex. A; Pl. Ex. B.)

65. The ccs_online999 Product is not and has never been sold by Mattel or its licensees. (Doc 83 ¶ 24.)

66. Neither Mattel nor its licensees authorized the sale of the ccs_online999 Product.  (Doc 83 ¶ 25.)

67. Defendant ccs_online999 sold seven (7) ccs_online999 Products on eBay.  (Doc 83 ¶ 22.) At least one of these Products was sold to a consumer located in New York.  (Id. ¶ 23.)

68. The Wang Defendants did not produce any documents or information relating to their profits and/or costs associated with their sales of the above products.  (See Pl. Ex. D.)

69. The Wang Defendants did not submit any defenses to Mattel's claims.  (Doc 83 at 16.)

CONCLUSIONS OF LAW

A.  Trademark Infringement and Counterfeiting by Four of the Wang Defendants' Merchant Storefronts

70. The Court concludes that four of the Wang Defendants' Merchant Storefronts, operated by three of the individual Storefront Owners, infringed certain of Mattel's Barbie Marks in violation of the Lanham Act, and that these defendants' products are counterfeits within the meaning of the Lanham Act.

71. To state claims for trademark infringement and counterfeiting "for registered trademarks, pursuant to 15 U.S.C. § 1114 . . . a plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale . . . or advertising of goods or services,' 15 U.S.C. § 1114(1)(a), (5), without the plaintiff's consent."  1-800 Contacts, Inc. v.

WhenU.Com, Inc., 414 F.3d 400, 406-407 (2d Cir. 2005); Salvatore Ferragamo S.p.A. v.

Does 1-56, 18-cv-12069 (JPO), 2020 WL 774237, at *2 (S.D.N.Y. Feb. 18, 2020) (citing

1-800 Contacts).

72. Mattel has met all of these requirements with respect to defendants herpop, keepupop,

ovepop2009, and ccs_online999, all of which incorporated the registered Barbie Mark

No. 2,639,971 in their respective products.  (Infringement Chart at 3-6.)

73. Defendant herpop is owned by Huang Dongwu, defendants keepupop and ovepop2009

are owned by Xioling Gao, and defendant ccs_online999 is owned by Luo Bin.  (Id.)

74. The parties agree that Mattel's Barbie Marks are valid and incontestable.  (Doc 83 ¶ 12.)

The parties also agree that Mattel is the exclusive owner of all right and title to the Barbie

Marks.  (Id. ¶ 13.)

75. Mattel has provided copies of its United States Patent and Trademark Office ("USPTO")

trademark registrations, which are prima facie evidence of the validity of the marks.  Spin

Master Ltd. v. 158, __ F. Supp. 3d __, 18 cv 1774 (LJL), 2020 WL 2766104, at *10

(S.D.N.Y. May 28, 2020); (Pl. Ex. A to Ex. A.)

76. These defendants advertised for sale and sold their respective Products on eBay.  (Doc 83

¶¶ 20, 22, 37, 39, 49, 51; Infringement Chart at 5; Pl. Ex. A to Ex. C.)  These sales were

not authorized by Mattel or its licensees.  (Id. ¶¶ 25, 42, 53.)

77. Neither Mattel nor its licensees sold these Products.  (Doc 83 ¶¶ 24, 41, 52.)

78. Mattel must also show that the Wang Defendants' "use of [the] mark is likely to cause

confusion . . . as to the affiliation, connection, or association of [defendant] with

[plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods,

services, or commercial activities by [plaintiff]."  1-800 Contacts, 414 F.3d at 407

(internal quotation marks and citation omitted).

79. When determining likelihood of confusion, the Second Circuit "appl[ies] the multi-factor

balancing test articulated . . . in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495

(2d Cir. 1961)."  New Kayak Pool Corp. v. R & P Pools, Inc., 246 F.3d 183, 185 (2d Cir.

2001).

80. However, "[w]hen counterfeit marks are involved, it is not necessary to consider the

factors set out in Polaroid Corp., which are used to determine whether a mark is a

colorable imitation of a registered mark that creates a likelihood of confusion about its

source, because counterfeit marks are inherently confusing."  Colgate-Palmolive Co. v.

J.M.D. All-Star Import & Export Inc., 486 F. Supp. 2d 286, 289 (S.D.N.Y. 2007)

(internal quotation marks and citation omitted); Gucci Am., Inc. v. Duty Free Apparel,

Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("[T]he Court need not undertake a

factor-by-factor analysis under Polaroid because counterfeits, by their very nature, cause

confusion.").

81. Trademark counterfeiting "is merely an aggravated form of infringement."  Tiffany &

Co. v. Costco Wholesale Corp., 971 F.3d 74, 95 (2d Cir. 2020).

82. Pursuant to the Lanham Act, a "'counterfeit' is a spurious mark which is identical with,

or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127; 15 U.S.C.

§ 1116(d)(1)(B).

83. The herpop, keepupop, ovepop2009, and ccs_online999 Products incorporate the exact

Barbie Mark No. 2,639,971.  (Infringement Chart at 3-6.)

84. The parties stipulate that these Products are "Counterfeit Goods."  (Infringement Chart.)

- 13 -

85. There is no question, therefore, that these defendants' Products are likely to cause confusion.

86. Mattel has established that Wang Defendants' Merchant Storefronts herpop, keepupop, ovepop2009, and ccs_online999, and therefore individual Storefront Owners Huang Dongwu, Xioling Gao, and Luo Bin infringed and counterfeited its Barbie Mark.

87. The Wang Defendants' trademark infringement and counterfeiting were willful. "The factors that support a finding of willfulness in a Lanham Act case mirror those that apply in suits brought under the Copyright Act, 17 U.S.C. § 504(c): a plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard . . . or willful blindness." 4 Pillar Dynasty LLC v. N.Y. & Co., 933 F.3d 202, 209-10 (2d Cir. 2019) (internal quotation marks and citation omitted).

88. Courts have found willful infringement and counterfeiting where, for example, defendants "knowingly offered for sale merchandise bearing counterfeits" of the plaintiff's registered marks, and where the counterfeits "bore the marks that were identical to such strong and established marks . . . ." Coach, Inc. v. Allen, 11 Civ. 3590 (CM), 2012 WL 2952890, at *9-*10 (S.D.N.Y. July 19, 2012).

89. The same is true here. The Wang Defendants sold and offered for sale products bearing the exact Barbie Mark, which is undisputedly famous. (Doc 83 ¶¶ 8-9; Infringement Chart.) It is also undisputed that the Wang Defendants were not authorized to sell products bearing the Barbie Mark. (Doc 83 ¶¶ 25, 42, 53, 70.)

B.  Copyright Infringement by Seven of the Wang Defendants' Merchant Storefronts

90. The Court concludes that seven of the Wang Defendants' Merchant Storefronts, operated by each of the four individual Storefront Owners, infringed certain of Mattel's Barbie Works.

91. To state a claim for copyright infringement pursuant to 17 U.S.C. § 501, a plaintiff must establish two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).  This requires a copyright owner to "demonstrate that (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's."  Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 110 (2d Cir. 2001) (internal quotation marks and citation omitted) (emphasis in original).

92. Mattel has met these requirements with respect to defendants lucky992016, popular888, ilante, herpop, keepupop, ovepop2009, and ccs_online999.

93. Defendants lucky992016, popular888, and ilante are owned by Ya Qin, defendant herpop is owned by Huang Dongwu, defendants keepupop and ovepop2009 are owned by Xioling Gao, and defendant ccs_online999 is owned by Luo Bin.  (Infringement Chart.)

94. A certificate of registration is prima facie evidence of ownership of a valid copyright.  17 U.S.C. § 410(c); Urbont v. Sony Music Entmt., 831 F.3d 80, 88-89 (2d Cir. 2016) (citing 17 U.S.C. § 410(c)).

95. It is undisputed that Mattel owns various, valid registered Barbie Works, and is the exclusive owner of these Works.  (Doc 83 ¶¶ 15, 16; Pl. Ex. B to Ex. A; Pl. Ex. B.)

96. The Wang Defendants do not dispute that the lucky992016, popular888, ilante, herpop, keepupop, ovepop2009, and ccs_online999 Products incorporated substantially similar, if not identical, elements of the registered Barbie Works VA 1-843-508, VA 1-849-098, VA 1-884-053, VA 1-849-097, and PAu 2-860-319.  (Infringement Chart.)

97. By incorporating substantially similar and/or identical elements of the Barbie Works in their respective Products without Mattel's or its licensees' authorization, these defendants illegally copied Mattel's Barbie Works.

98. Mattel has established that Merchant Storefronts lucky992016, popular888, ilante, herpop, keepupop, ovepop2009, and ccs_online999, and therefore each of the four individual Storefront Owners—Ya Qin, Huang Dongwu, Xioling Gao, and Luo Bin— infringed its Barbie Works as described above.

99. The defendants' copyright infringement was willful.  Copyright infringement is "willful" where a plaintiff establishes "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights."  Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 263 (2d Cir. 2005).  Infringement may be found to be willful where a defendant "recklessly disregarded the possibility" of its infringing conduct.  Bryant v. Media Right Prods., Inc., 603 F.3d 135, 143 (2d Cir. 2010) (internal quotation marks and citation omitted).

100.     At the very least, the Wang Defendants recklessly disregarded Mattel's rights in the Barbie Works.  It is undisputed that Mattel's "Barbie" brand is world-famous, and that the Barbie Works are owned exclusively by Mattel.  (Doc 83 ¶¶ 8-9, 16.)

101.     It is also undisputed that the Wang Defendants were not authorized to use the

Barbie Works in their Products.  (Doc 83 ¶¶ 25, 31, 36, 42, 48, 53, 58, 62, 69, 71.)

C.   The False Designation of Origin, Passing Off, and Unfair Competition Claim

102.     Mattel also claims that the Wang Defendants violated section 43(a) of the Lanham

Act, 15 U.S.C. § 1125(a), by engaging in false designation of origin, passing off, and

unfair competition.  (Doc 83 at 19; Trial Tr. at 18.)

103.     The Court notes that Mattel does not include this claim in either its proposed

findings of fact and conclusions of law, or its post-trial briefing.  (See Docs 93, 94.)

104.     However, at the bench trial, counsel for Mattel confirmed that it sought injunctive

relief, and was foregoing damages, on this claim.  (Trial Tr. at 18.)

105.     While "there is no specific [f]ederal cause of action for unfair competition"

pursuant to the Lanham Act, "[i]nstead unfair competition under the Lanham Act is a

category of claims consisting primarily of causes of action for false designation of origin

and false advertising."  Pot Luck, L.L.C. v. Freeman, 06 Civ. 10195 (DAB), 2009 WL

693611, at *4 (S.D.N.Y. Mar. 10, 2009).

106.     Courts in this District have found that a plaintiff that has established trademark

infringement need not "present further proof to succeed on a claim of federal unfair

competition."  Cartier Int'l B.V. v. Ben-Menachem, 06 Civ. 3917, 2008 WL 64005, at

*13 (S.D.N.Y. Jan. 3, 2008) (Sweet, J.); see Lorillard Tobacco Co. v. Jamelis Grocery,

Inc., 378 F. Supp. 2d 448, 454 (S.D.N.Y. 2005) (applying the same standard to Lanham

Act claims pursuant to 15 U.S.C. § 1114 and 15 U.S.C. § 1125); Gucci Am., 286 F. Supp.

2d at 287 (same).

107.     Because Mattel has successfully established that four of the Merchant

Storefronts—herpop, keepupop, ovepop2009, and ccs_online999—owned by three of the

individual defendants (Huang Dongwu, Xioling Gao, and Luo Bin, respectively)

infringed its Barbie Mark No. 2,639,971 in violation of 15 U.S.C. §§ 1114 and 1116(d), it

has also met its burden of showing that these defendants violated section 1125.

## DAMAGES AND EQUITABLE RELIEF

A.  Statutory Damages

108.     Mattel is entitled to heightened statutory damages under both the Lanham and

Copyright Acts.  Mattel seeks $200,000 from each of the Storefront Owners for their

respective storefronts' willful violations of Mattel's rights in the Barbie Mark and Works,

as described above.

109.     Where "a case involv[es] the use of a counterfeit mark . . . the plaintiff may elect .

. . to recover, instead of actual damages and profits under subsection (a), an award of

statutory damages . . . (1) not less than $1,000 or more than $200,000 per counterfeit

mark per type of goods or services sold, offered for sale, or distributed, as the court

considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not

more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for

sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c).

110.     Similarly, a copyright owner may elect to receive statutory instead of actual

damages "in a sum of not less than $750 or more than $30,000 as the court considers

just."  17 U.S.C. 504(c)(1).  Where, however, copyright infringement is found to be

willful, "the court in its discretion may increase the award of statutory damages to a sum

of not more than $150,000."  Id. § 504(c)(2).

111.     The Copyright Act "shifts the unit of damages inquiry from number of infringements to number of works." Twin Peaks Prods., Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1381 (2d Cir. 1993).

112.     Mattel has elected to receive statutory instead of actual damages.  The Wang Defendants provided no information as to the extent of their sources or purchases of the infringing products, or the profits they generated.  (Pl. Ex. D.)  In fact, the Wang Defendants represented that no documentary evidence concerning their purchase of the infringing products existed "because all transactions were in person cash transactions." (Id.)

113.     Courts rely on several factors when determining a statutory damages award for copyright infringement, Fitzgerald Pub. Co. v. Baylor Pub. Co., 807 F.2d 1110, 1117 (2d Cir. 1986), and have borrowed and applied these factors in the context of trademark infringement.  Smart Study Co., Ltd. v. lizhiwangluo16, 2020 WL 3639659, at *6 (S.D.N.Y. July 6, 2020) (Koeltl, J.).  These factors include "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright or, by analogy, trademark; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant."  Id. (citation omitted).

114.     The Wang Defendants have not provided any evidence to establish their profits, or any records from which Mattel or the Court could assess the value of the Wang Defendants' infringing products.  (Pl. Ex. D; see generally Doc 83.)

- 19 -

115.     Several of the other factors weigh in favor of a heightened statutory damage

award.  The Barbie Mark and Works are world-famous and highly valuable.  (Doc 83

¶¶ 8-9.)  Further, the Wang Defendants' conduct was willful.  There is a need to deter

these and similarly situated defendants from engaging in such conduct in the future.

116.     The Court finds $200,000 in damages from each of the individual Storefront

Owners (Ya Qin, Huang Dongwu, Xioling Gao, and Luo Bin) to be "just."  15 U.S.C.

§ 1117(c).

117.     "A plaintiff seeking compensation for the same injury under different legal

theories is of course only entitled to one recovery."  Indu Craft, Inc. v. Bank of Baroda,

47 F.3d 490, 497 (2d Cir. 1995); Viacom Int'l Inc. v. Fanzine Int'l, Inc., 2001 WL

930248, at *5 (S.D.N.Y. Aug. 16, 2001) (citing Indu Craft).

118.     The Court need not decide the question of "double recovery," or apportion

damages between the Lanham and Copyright Acts in this case, as "the Lanham Act alone

provides ample room for" the award sought by Mattel.  Ontel Prods. Corp. v. Amico Int'l

Corp., 07 Civ. 7356 (JGK) (FM), 2008 WL 4200164, at *5 (S.D.N.Y. Aug. 19, 2008),

R&R adopted, 2008 WL 4298504 (S.D.N.Y. Sept. 11, 2008).

119.     Indeed, courts in this District have awarded higher statutory damage amounts

where defendants willfully infringed trademarks and/or copyrights.  See, e.g., Coach, Inc.

v. O'Brien, 10 Civ. 6071(JPO) (JLC), 2012 WL 1255276, at *4 (S.D.N.Y. Apr. 13, 2012)

(awarding $83,000 per infringed mark, for a total of $249,000); All-Star Mktg. Grp., LLC

v. Media Brands Co., Ltd., 775 F. Supp. 2d 613, 624-25 (S.D.N.Y. 2011) (collecting

cases concerning imposition of damages for willful trademark infringement); Peer Int'l

Corp. v. Max Music & Entmt., Inc., 03 Civ. 0996 KMW DF, 2004 WL 1542253, at *5

(S.D.N.Y. July 9, 2004) (Freeman, M.J.) (recommending $30,000 in damages for each copyrighted work infringed, for a total amount of $900,000).

120.    Mattel is also entitled to post-judgment interest pursuant to 28 U.S.C. § 1961. The amount of interest is to be determined as provided for in the statute.  28 U.S.C. § 1961; Spin Master Ltd. v. 13385184960@163.com, 18 Civ. 10524 (LGS), 2020 WL 2614766, at *5 (S.D.N.Y. May 22, 2020) (awarding plaintiffs "post-judgment interested in an amount to be determined according to the statutory formula.").

B.  Attorneys' Fees

121.    Plaintiffs who elect to receive statutory instead of actual damages for trademark counterfeiting pursuant to section 1117(c) may, in "exceptional cases," also be awarded attorneys' fees.  Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012).  "Exceptional cases" are those that "stand[] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014).  The determination of whether a case is "exceptional" is a "case-by-case exercise of [the district court's] discretion, considering the totality of the circumstances."  Id.; 4 Pillar Dynasty, 933 F.3d at 215-16 (noting that the definition of "exceptional case" in Octane Fitness applies to Lanham Act cases).

122.    The Copyright Act also authorizes courts, in their discretion, to "allow the recovery of full costs by or against any party other than the United States or an officer thereof. . . . [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  "Because the Copyright Act is intended to

encourage suits to redress copyright infringement, fees are generally awarded to a prevailing plaintiff."  Roth v. Pritikin, 787 F.2d 54, 57 (2d Cir. 1986).

123.    The Court concludes, based on the totality of the circumstances, including the Wang Defendants' willful infringement and counterfeiting of Mattel's Barbie Mark and Works, and the Wang Defendants' conduct of this litigation, that this is an exceptional case and that the imposition of attorneys' fees and costs are warranted.  Within fourteen (14) days of these Findings of Fact and Conclusions of Law, attorneys for Mattel shall submit an application for attorneys' fees, including contemporaneous billing records for each attorney, Scott v. City of N.Y., 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam), that "document[] the date, the hours expended, and the nature of the work done," and sufficient information for the Court to determine the reasonableness of the proposed hourly rate and the time expended. Hounddog Prods., L.L.C. v. Empire Film Grp., Inc., 826 F. Supp. 2d 619, 634-35 (S.D.N.Y. 2011).

C.  Permanent Injunction

124.    Mattel also seeks the imposition of a permanent injunction, which will be granted.

125.    The Court has authority to issue a permanent injunction pursuant to the Lanham Act, 15 U.S.C. § 1116.  Injunctions may also issue in the context of copyright infringement.  See Salinger v. Colting, 607 F.3d 68, 77-78 (2d Cir. 2010).

126.    "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the

public interest would not be disserved by a permanent injunction." <u>eBay Inc. v.</u>
<u>MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006).

127.  "Irreparable harm" has been found "through loss of reputation, good will, and
business opportunities." <u>Register.com, Inc. v. Verio, Inc.</u>, 356 F.3d 393, 404 (2d Cir.
2004); <u>Really Good Stuff, LLC v. BAP Investors, L.C.</u>, 813 F. App'x 39, 44 (2d Cir.
2020) (summary order).

128.  The Wang Defendants caused harm to Mattel's reputation and good will by
trading on the fame of the Barbie brand and selling infringing products bearing
confusingly similar, if not identical, Barbie Mark and Works.

129.  Monetary damages, which are at best an approximation in this case given the
Wang Defendants' lack of documentary evidence to substantiate their purchases of
infringing products (Pl. Ex. D), are insufficient here.

130.  The balance of hardships favors Mattel, such that an equitable remedy is
warranted.  Absent an injunction, Mattel may continue to suffer the same harms if the
Wang Defendants could resume sales of the infringing products.  <u>See</u> <u>Scores Holding Co.</u>
<u>Inc. v. CJ NYC Inc.</u>, 17 Civ. 0020 (RA), 2017 WL 2297014, at *3 (S.D.N.Y. May 24,
2017) ("A continuation of this activity would constitute irreparable harm, and monetary
damages would not adequately compensate the harm.").  Further, the Wang Defendants
"cannot complain about the loss of ability to offer [their] infringing product[s]." <u>WPIX,</u>
<u>Inc. v. ivi, Inc.</u>, 691 F.3d 275, 287 (2d Cir. 2012).

131.  Finally, "the public has an interest in not being deceived—in being assured that
the mark it associates with a product is not attached to goods of unknown origin and
quality," <u>New York City Triathlon, LLC v. NYC Triathlon Club, Inc.</u>, 704 F. Supp. 2d

305, 344 (S.D.N.Y. 2010), and "in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating" such works. WPIX, 691 F.3d at 287. The public's interests would therefore be served by granting a permanent injunction here.

132.     For these reasons, the injunctive relief set forth in the Court's Preliminary Injunction Order of December 20, 2018 (Doc 21) shall be entered as a permanent injunction.

D.  Asset Restraint and Transfer

133.     Mattel seeks a post-judgment continuation of the pre-judgment asset restraint (Doc 21), and the transfer of the Wang Defendants' frozen assets in satisfaction of the judgment. This relief will be granted.

134.     "[C]ourts in this district routinely order transfers of infringing defendant's frozen assets to plaintiffs . . . relying on the authority to issue injunctive relief under Rule 64, [Fed. R. Civ. P.], § 1116(a) of the Lanham Act, and 'this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief.'" Off-White LLC v. ^ ^Warm House^ ^ Store, 17 Civ. 8872 (GBD) (GWG), 2019 WL 418501, at *6 (S.D.N.Y. Jan. 17, 2019) (quoting Gucci Am., Inc. v. Curveal Fashion, 09 Civ. 8458 (RJS), 2010 WL 308303, at *5-*6 (S.D.N.Y. Jan. 20, 2010)); see also Smart Study, 2020 WL 3639659, at *8 ("The provisions of the judgments concerning the continuance of the current asset restraint as well as post-judgment asset restraints are appropriate in these cases under Federal Rules of Civil Procedure 64 and 65, 15 U.S.C. § 1116(a), this Court's inherent equitable powers . . . ."); Spin Master Ltd. v. Alan Yuan's Store, 325 F. Supp. 3d

413, 427 (S.D.N.Y. 2018) (court ordered continuing asset restraint and awarded transfer of frozen assets in full or partial satisfaction of damages).

135.     In those cases, unlike here, defendants had not appeared.  Despite the Wang Defendants appearing in this case and participating in the bench trial, the Court shares the concerns raised in those circumstances, namely, that the Wang Defendants could hide their assets.  Spin Master Ltd., 325 F. Supp. 3d at 427-28.  This is especially true given the Wang Defendants' representation to Mattel that their purchases of infringing products were all "in person cash transactions."  (Pl. Ex. D.)  Based on the Wang Defendants' non-production—and apparent lack of—records in this case, Mattel is justified in seeking security of payment of the damages it is owed.

CONCLUSION

For these reasons, the Court finds that Mattel has established that the Wang Defendants counterfeited one of Mattel's Barbie Marks, and willfully infringed this registered Barbie Mark and several of its registered Barbie Works.  The Wang Defendants, by the four individual Storefront Owners—Ya Qin, Huang Dongwu, Xioling Gao, and Luo Bin—are permanently enjoined from future infringing conduct, and shall each be liable in the amount of $200,000 in damages, plus attorneys' fees.  The application for attorneys' fees shall be filed within fourteen (14) days hereof.  The asset restraint previously entered will remain in effect, and, seven (7) days after the determination of attorneys' fees, Mattel may submit a proposed Order effectuating a transfer of the restrained assets of each Storefront Owner to Mattel up to but not exceeding the amount of damages and attorneys' fees imposed upon the particular Storefront Owner.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
September 25, 2020